UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DELVIS VARGAS,                                              :
                                                            :
                Petitioner,                                 :
                                                            :  04 CIV 8663  (HB)
                -against-                                   :
                                                            :  **OPINION & ORDER**
UNITED STATES OF AMERICA                                    :
                                                            :
                Respondent.                                 :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:\***

      On August 7, 2003, this Court sentenced petitioner Delvis Vargas ("Vargas") to 121 months imprisonment, to be followed by a five-year term of supervised release. On November 3, 2004 Vargas filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Vargas seeks to vacate his sentence on the ground that his attorney rendered ineffective assistance of counsel. For the following reasons, the petition is DENIED.

I.     BACKGROUND

      On March 6, 2003, a jury convicted Vargas of conspiring to distribute and possess with intent to distribute 50 grams or more of cocaine in violation of 21 U.S.C. § 846. (Tr. 283). At trial, the Government established that Vargas, aided by co-defendants Domingo Gaton ("Gaton") and Luis Morant-Cordero ("Cordero"), sold 68 grams of crack cocaine to a confidential informant ("CI") working with the Federal Bureau of Investigation ("FBI"). Gaton negotiated the sale with the CI during August and September 2002, and met the CI on September 18, 2002 in front of La Caridad Restaurant near the corner of Amsterdam Avenue and 164th Street in Manhattan. (Tr. 27, 76). Vargas and Cordero arrived shortly thereafter in a van, and Gaton got in the van. (Tr. 77). An

---

\* David S. Wenger, a fall 2005 intern in my Chambers, and currently a third-year law student at Fordham University School of Law, provided substantial assistance in the research and drafting of this Opinion.

officer observed Vargas and Cordero reaching into the center area between the front seats, where officers later found a hollowed-out loaf of bread. (Tr. 77-78, 84).

A short while later, Gaton exited the van and went inside La Caridad with the CI. (Tr. 85). The CI had been previously given $2,000 in pre-recorded buy money by an FBI agent and searched to make sure that he had no drugs on him. (Tr. 31). A short while later the CI emerged from the restaurant, and was re-searched by an agent who found a bag of crack cocaine in his possession. (Tr. 35). Gaton left the restaurant and re-joined Vargas and Cordero, who had been waiting inside the van. (Tr. 85-86). Vargas drove the trio away from the restaurant. (Tr. 86). Gaton exited the van a few blocks away. (Tr. 86). Agents then attempted to stop the van. (Tr. 38,138). After Vargas drove through four or five traffic lights in an attempt to elude the agents, he and Cordero were stopped, detained and brought to the police station. (Tr. 38, 138). The van was also impounded. (Tr. 139).

During the ensuing search, agents discovered $1,000 cash in Vargas' pocket, and $4,400 cash in the glove compartment and under the drivers' seat of Vargas' van. (Tr. 41, 139-140). All $2,000 of the FBI's pre-recorded buy money was recovered from the van. (Tr. 44-45). The money was seized, and Vargas was given a receipt. (Tr. 88-89).

Subsequently, while attempting to retrieve the money, Vargas made three statements to the New York City Police Department ("NYPD") regarding the source of the funds. The three statements conflicted with each other and with the statement Vargas made to agents on September 18, 2002. On September 18, 2002, Vargas had told the agents that all of the money in the van was his and that he had earned it from a job at the grocery store. (Tr. 122). On September 19, Vargas told an NYPD Internal Affairs Bureau officer that $6,000 – not $5,400 – was seized, of which $5,000 belonged to Vargas and $1,000 was a loan from a friend. (Tr. 127-128). Vargas again

stated that he had earned the money working at a grocery store, and claimed he was going to use the money to buy a motorcycle. (Tr. 127-128). On September 24, Vargas provided an NYPD detective with a written statement in which he claimed that $5,500 was seized and that all of the money was his own. (Tr. 92). Finally, on October 2, 2002, Vargas told an officer and an FBI agent that he wanted to pick up all $5,400 seized, that all of the money was his, that a friend had given him $2,000 and the rest he had earned from his job at the grocery store. (Tr. 47-48, 96-97).

Agents interviewed Cordero separately on October 2, 2002. (Tr. 97). He told them that he agreed to loan Vargas $2,000, and had met Vargas on September 18 to give him the money. (Tr. 97-98). When Vargas picked him up, Cordero said he immediately put the $2,000, which he had earned from his job at a grocery store, into the glove compartment. (Id.).

Vargas, Cordero and Gaton were arrested on October 2, 2002. After a four-day trial that concluded on March 6, 2003, Vargas was convicted of violating 21 U.S.C. § 846.[1] On August 7, 2003, I sentenced Vargas to 121 months imprisonment to be followed by a five-year term of supervised release. The Court of Appeals for the Second Circuit affirmed the conviction on March 25, 2004.[2]

II. DISCUSSION

In support of his petition for a writ of habeas corpus, Vargas contends that his attorney provided ineffective assistance by: (1) failing to present a defense at trial; (2) failing to call various fact witnesses at trial; and (3) failing to conduct a pre-trial investigation. Although petitioner did not raise these issues on direct appeal, claims based on ineffective assistance of counsel may be raised for the first time in a habeas petition where, as here, petitioner was represented by the same

---

[1] Gaton and Cordero pled guilty to charges arising from the September 18, 2002 sale.
[2] United States v. Gaton, 03-1422, 2004 U.S. App. LEXIS 10238 (2d Cir. March 25, 2004).

3

attorney at trial and on the direct appeal. See Ciak v. United States, 59 F.3d 296, 303 (2d Cir. 1995).

In order to prevail on a claim based on ineffective assistance of counsel, Vargas must show "both (1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" See Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984)). The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Prejudice is shown if, but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 534.

### A. Counsel Did Not Fail to Present a Defense

In support of his argument for ineffective assistance of counsel, Vargas contends that counsel "failed to present any type of defense." (Vargas Mem. at 9). Vargas claims that defense counsel expressed confidence that this Court would grant a motion to dismiss after the prosecution rested or that the jury would acquit. Id. at 9. The trial record, however, shows that counsel did present an effective defense—the "mere presence" defense—which, if believed by the jury, could have resulted in Vargas' acquittal. (Tr. 217-234); see United States v. Santos, 425 F.3d 86 (2d Cir. 2005) (mere presence at a crime scene does not establish intentional participation in the conspiracy). "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Kieser v. New York, 56 F.3d at 18 (internal quotation omitted).

Vargas also claims that counsel failed to offer into evidence a newspaper advertisement seized from Vargas on September 18 that listed the motorcycle Vargas allegedly intended to purchase with the money seized from him. The government maintains that no such item was

4

recovered from Vargas or produced to defense counsel in discovery. (Government's Mem. at 16). The Government also submitted an affidavit from Vargas' defense counsel, which states that defense counsel has "no recollection that such [an] advertisement was found" in Vargas' possession on [September 18]. (Touger Aff. ¶ 28). Moreover, Vargas has failed to show a reasonable probability that such evidence, even if presented at trial, would have resulted in an acquittal.

      B.      <u>Counsel Did Not Fail to Call Fact Witnesses</u>

Vargas alleges that counsel failed to call important fact witnesses and that counsel informed petitioner that it was not necessary to call any witnesses because of the weakness of the government's case. (Vargas Mem. at 15). Specifically, Vargas contends that counsel failed to: (1) call witnesses to testify that the money belonged to him (Vargas Mem. at 10-11); (2) call witnesses to corroborate Vargas' alleged employment in a grocery store (<u>id.</u> at 11); (3) call the CI to "to establish that [the CI] did not know the petitioner, had no prior dealings with the petitioner, and that the petitioner was not involved in the transaction" (<u>id.</u> at 12); (4) call the "owner of the motorcycle . . . [whom] the peitioner had spoken to on various occasions in order to set up the purchase" (<u>id.</u> at 12); (5) call Vargas' cousin, who "would have testified that he was given the $5,000 by petitioner, to deposit into his bank account, because petitioner did not have one himself" (<u>id.</u> at 12-13); and (6) call Vargas' co-defendant Gaton to testify about the extent of Vargas' involvement in the conspiracy (<u>id.</u> at 14).

As to Vargas' first contention that counsel failed to call any witnesses to testify that the seized money belonged to Vargas, defense counsel attests that he called no witnesses on this subject "because there were no witnesses to call." (Touger Aff. ¶ 26). Even if a witness was called to testify that all of the money was Vargas', the testimony would have been rebutted by the proof at trial that $2,000 of the $5,400 seized was the FBI's pre-recorded buy money.

Vargas' next contention is that counsel failed to call a witness to corroborate his employment at a grocery store in Washington Heights, which Vargas claims would have explained the source of the money. Counsel, however, states that he attempted to find the grocery store but, even after visiting the neighborhood, "could not find one grocery store owner to testify that he employed [Vargas]." (Touger Aff. ¶ 27). Three grocery store owners testified for the government that Vargas did not work for them. (Id. at 28).

Vargas also claims that counsel rendered ineffective assistance by failing to call the CI to establish that the CI had no prior connection with Vargas and that Vargas was not involved in the transaction. (Vargas Mem. at 11-12). At no point during the trial, however, did the government argue that there was any contact or prior relationship between the CI and Vargas. (See Tr. 204-17). Again, Vargas fails to show that the CI's testimony would have changed the outcome.

Next, Vargas claims that counsel failed to call the owner of the motorcycle with whom Vargas "had . . . spoken . . . on various occasions in order to set up the purchase." (Vargas Mem. at 12). Counsel states that "he was never told by anyone who the owner of the motorcycle was." (Touger Aff. ¶ 30). Moreover, Vargas has failed to demonstrate that such testimony would have significantly aided his defense.

Vargas further claims that counsel failed to call Vargas' cousin, who would have testified that Vargas had previously given him $5,000 to deposit at the bank, but that he had returned the money to Vargas on September 18 so Vargas could purchase the motorcycle. (Vargas Mem. at 12-13). Counsel states that he could not call Vargas' cousin because "he was not available to testify." (Touger Aff. ¶ 31). Here too, Vargas has failed to demonstrate how this testimony would have affected the outcome of the trial in the face of the evidence presented by the government regarding the seizure of $2,000 in pre-recorded buy money.

6

Finally, Vargas claims that counsel failed to call co-defendant Gaton to testify about the extent of Vargas' involvement in the conspiracy. (Vargas Mem. at 14). Again, Vargas fails to demonstrate how this witnesses' testimony would have affected the outcome of the trial. The government made no allegation at trial regarding a prior relationship between Vargas and Gaton; instead it asserted that Vargas delivered the drugs to the location of the sale. (See Tr. 77-78, 84, 204-217).

C. <u>Counsel Did Not Fail to Conduct a Pre-Trial Investigation</u>

Vargas alleges that counsel failed to conduct any pre-trial investigation. (Vargas Mem. at 15). Vargas, however, has not provided a sworn statement from any witness he claims would have testified on his behalf. However, counsel states that he personally visited Vargas' neighborhood to attempt to find a witnesses to testify on Vargas' behalf. (Touger Aff. ¶ 27). Vargas has failed to demonstrate how any additional pre-trial investigation would have changed the outcome of the trial.

IV. CONCLUSION

Petitioner has failed to show that counsel's performance fell below an objectively reasonable standard, or that there is a reasonable probability that the result of the proceedings would have been different if not for counsel's alleged errors.

Accordingly, Vargas' petition for a writ of habeas corpus is DENIED. The Clerk of the Court is instructed to close this matter and any pending motions and to remove this matter from my docket.

**SO ORDERED.**

November 21, 2005
New York, New York

_____
U.S.D.J.